# United States District Court
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

PEGGIE J. COATS § 
 § Civil Action No. 4:17-CV-557
v. § (Judge Mazzant/Judge Nowak)
 §
UNITED STATES OF AMERICA §

### MEMORANDUM ADOPTING IN PART AND REJECTING IN PART REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Came on for consideration the report of the United States Magistrate Judge in this action, this matter having been heretofore referred to the Magistrate Judge pursuant to 28 U.S.C. § 636. On November 9, 2018, the report of the Magistrate Judge ("the Report") (Dkt. #50) was entered containing proposed findings of fact and recommendations that Defendant's Motion to Dismiss Third Amended Complaint (Dkt. #36) and Plaintiff's Motion for Judgment on the Pleadings (Dkt. #42) both be denied. Defendant filed objections to the report on December 14, 2018 (Dkt. #59). The Court adopts in part and rejects in part the Report.

### BACKGROUND

The underlying facts of this case have previously been set forth in the Magistrate Judge's report; as such, the Court sets forth only those facts pertinent to the Government's Objections.

On August 10, 2017, Plaintiff filed suit against the Government, seeking "an order to quiet title and remove the illegal, invalid and unenforceable lien on the property" located at 737 Snowshill Trail, Coppell, Texas 75019 (the "Coppell Property") (Dkt. #1). Several years prior to the instant suit, Plaintiff's husband[1] was charged with two violations of 18 U.S.C. § 1341, Mail

---

[1] As will be explained, both Plaintiff and her husband were involved in the allegations regarding defrauding inmates' family members; however, prior to the information being filed, Plaintiff accepted a pretrial diversion agreement (Dkt. #4, Exhibit 1). Accordingly, the information was brought solely against Plaintiff's husband, Andrew Robert Coats.

Fraud, in a two-count information in April 2009.  *United States v. Andrew Robert Coats*, Case No. 4:09-cr-47 (Dkt. #1) (E.D. Tex. 2009).  Plaintiff and her husband were alleged to have defrauded inmates' family members with the promise of early parole for their incarcerated family members. *See id*.  Plaintiff's husband entered a guilty plea on May 7, 2009, and was sentenced to 150 months imprisonment, and ordered to pay $949,345.53 in restitution to the victims.  *Id*. at (Dkt. #11; Dkt. #42).  The Government thereafter filed judgment liens pursuant to the Mandatory Victims' Restitution Act ("MVRA"), in Dallas County and Panola County, Texas, locations where Plaintiff's husband was known to hold real property interests.  With respect to these same charges, Plaintiff received and completed pretrial diversion.  *Id*. at (Dkt. #22 at p. 21).

On June 28, 2010, Plaintiff purchased the Coppell Property.  The Deed of Trust for the Coppell Property identifies the borrowers as "Peggie Coats, Joined Herein Pro Forma by Her Husband, Andy B. Coats," and bears Plaintiff and her husband's signatures (Dkt. #36, Exhibit 3 at p. 3).  After discovering the Coppell Property, the Government filed a federal restitution judgment lien in Denton, County in July 2013.  Plaintiff's Third Amended Complaint alleges that the Government may not impose any federal judgment lien related to her husband's criminal restitution on the Coppell Property because such property is Plaintiff's separate property (Dkt. #32).

The Government filed its Motion to Dismiss on April 10, 2018 (Dkt. #36), Plaintiff responded on April 24, 2018 (Dkt. #38), the Government replied on April 27, 2018 (Dkt. #39), and Plaintiff filed a sur-reply on May 9, 2018 (Dkt. #40).  Subsequently, on June 15, 2018, Plaintiff filed a Motion for Judgment on the Pleadings (Dkt. #42), on July 9, 2018, the Government responded (Dkt. #46), and on July 18, 2018, Plaintiff replied (Dkt. #48).  On November 9, 2018, the Magistrate Judge entered the Report, recommending that Plaintiff's Motion for Judgment on

the Pleadings (Dkt. #42) and the Government's Motion to Dismiss (Dkt. #36) each be denied, and further recommending that the issue of whether the Coppell Property constituted Plaintiff's separate property should be decided at summary judgment. On November 16, 2018, the Court granted the Government's request for an extension of time to file objections, extending the deadline to object to December 7, 2018 (Dkt. #52). On November 27, 2018, the Court granted Plaintiff's request for an extension of time to file objections to the Report, extending the deadline for all Parties to object to December 14, 2018 (Dkt. #55). On December 12, 2018, Plaintiff filed a Motion to Show the Court Affirmative Evidence (Tracing of Funds), which is construed as a motion for summary judgment (Dkt. #60; Dkt. #61).[2] However, Plaintiff did not file any objections to the Report. On December 14, 2018, the Government filed Objections to the Report (Dkt. #59). Plaintiff filed a response to these objections on January 7, 2019 (Dkt. #62).

**LEGAL STANDARD**

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff.

---

[2] Although Plaintiff asks the Court to consider the evidence submitted in these documents together with the objections, the Court will not consider evidence not before the Magistrate Judge in deciding the Report. Moreover, if the Court converts a motion to dismiss into a motion for summary judgment, the Court must provide all parties a "reasonable opportunity to present all the material that is pertinent to the motion." FED. R. CIV. P. 12(d). As such, the Court does not consider the evidence presented by Plaintiff in that motion.

*Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "'A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

**ANALYSIS**

A party who files timely written objections to a magistrate judge's report and recommendation is entitled to a de novo review of those findings or recommendations to which the party specifically objects. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(2)–(3).

The Report first recommended that Plaintiff's Motion for Judgment on the pleadings be denied as premature on the basis that the Government had yet to file an answer. No objections were made to this recommendation. Accordingly, these findings and conclusions of the Magistrate Judge are adopted as those of the Court and the Motion for Judgment on the Pleadings should be denied.

The Report next recommended that the Government's Motion to Dismiss also be denied maintaining that, taking the Plaintiff's allegations as true, it was plausible that the funds used to purchase the Coppell Property were traceable to Plaintiff's separate property. The Government objected arguing that the motion to dismiss should be granted because, as a matter of law, the entirety of the Coppell Property is community property. The Court agrees that the motion to dismiss should be granted, but disagrees with the Government's way at arriving at such conclusion.

Plaintiff filed suit seeking "an order to quiet title and remove the illegal, invalid and unenforceable lien on the property." (Dkt. #1). The law as it stands, allows the Government to place a lien pursuant to the MVRA on:

(1) All of the debtor's solely managed community property;

(2) All of the couple's jointly managed community property, including the non-debtor spouse's undivided one-half interest in the property; and, important here,

(3) the debtor's one-half interest in his non-debtor spouse's solely managed community property, including her income.

(Dkt. #50 at p. 7) (quoting *United States v. Elashi*, 789 F.3d 547, 549 (5th Cir. 2015)).[3] Accordingly, the character of the Coppell Property is crucial to determine whether the lien is proper.

**I.     Characterization**

As correctly stated in the Report, because Plaintiff and the debtor were married at the time the Coppell Property was purchased, the Coppell Property is presumptively community property. However, this is just a presumption that can be overcome. To overcome the presumption, Plaintiff has to show by clear and convincing evidence that she purchased the Coppell Property with separate funds. The Coppell Property was purchased, like most houses are, with two separate sources of funds: (1) a mortgage and (2) a down payment. The Court must analyze both sources of payment to determine the character of the Coppell Property.

**A. Mortgage**

As to the mortgage, the Government argues[4] because the mortgage was acquired during the marriage and community property was relied on to acquire the mortgage it is a community debt. "In general, an asset that is purchased on borrowed funds during the course of a marriage is presumptively community in character, as it is presumed that the credit was extended to the community for the purchase." *Attaguile v. Attaguile*, No. 08-16-00222-CV, 2018 WL 4659580, at *7 (Tex. App.—El Paso Sept. 28, 2018, no pet. h.) (citations omitted).

Plaintiff first maintains that she has plausibly suggested that she can overcome this presumption because all of the mortgage payments came from her separate property. However,

---

[3] From Plaintiff's briefing, it appears she does not contest the fact that the lien would be appropriate if the Coppell Property were community property. She instead argues that the Coppell Property is not community property.
[4] The Court acknowledges that the Government did not make separate arguments specifically as to the down payment and the mortgage. However, the Court is able to apply certain arguments the Government made to each source of funds.

even taking these facts as true, these facts do not overcome the presumption. *Attaguile*, 2018 WL 4659580, at *8 (citations omitted). Demonstrating that mortgage payments were made from one spouse's separate property merely creates a claim for reimbursement, rather than changing the character of the property. *Id.*

However, this presumption can be overcome if it is shown that the lender looked specifically to the borrower's separate property for payment on the loan. *Tedder v. Aldrich*, 421 S.W.3d 651, 654–55 (Tex. 2013) (holding "[i]f the lender or seller does not specifically look to the borrower's or buyer's separate property for payment, it is clear that a community debt has been incurred, and thus that the money borrowed or property bought is community property."). Here, although Plaintiff[5] argues that the lender, Network Funding, only looked to her for payment of the mortgage, she has not plausibly suggested that to be the case. In fact, in her loan application,[6] while she crossed out her husband's name when disclosing whose name title would be held in, she did indicate that title would be held in community property. (Dkt. #39, Exhibit 1 at p. 2). Moreover, the loan application indicates that the lender did in fact consider, community property as part of the assets securing the loan. (Dkt. #39, Exhibit 1 at p. 4) (listing a prior residence held in community property on the page identifying assets and liabilities).[7] Taking the facts in the

---

[5] Plaintiff argues that she can establish separate credit because her warranty deed shows her as the sole grantee. However, who is listed on the warranty deed would not change the characterization of the mortgage.

[6] The Court may consider the loan application in deciding the motion to dismiss, as it is attached to the Government's reply to the motion to dismiss and is central to and referenced by the Plaintiff's complaint. *Lone Star Fund*, 594 F.3d at 387 (holding "[t]he Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."). Moreover, Plaintiff attached the loan application to her motion to quiet title, which could possibly be construed as an extension of her complaint because she filed the lawsuit to quiet title. The Court may also take judicial notice of the loan application because it can be readily determined and its accuracy is not questioned by either party. FED. R. EVID. 201; *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017–18 (5th Cir. 1996)) ("In deciding a motion to dismiss the court may consider documents attached to or incorporated in the complaint and matters of which judicial notice may be taken.").

[7] The Court notes it is also likely there are other instances of community property considered in the loan application (i.e., in the monthly income section, Plaintiff lists she receives $6,673.66 in dividends/interest. Even if the initial stock or item drawing interest was separate property, income from separate property that accumulates during the marriage is community property. TEX. FAM. CODE § 3.102(a)(2)).

pleadings, including the loan application, as true, it is not plausible that Plaintiff can overcome the community presumption in relation to her mortgage.

### B. Down Payment

In regards to the down payment, the Government argues this is community property as a matter of law. Plaintiff maintains she is able to trace her down payment to her separate property. Because the down payment was made during the marriage, it is presumptively community property, which can be overcome by clear and convincing evidence that she could "trace and clearly identify this payment to separate property." *In Interest of D.V.D.*, 05-17-00268-CV, 2018 WL 2316014, at *3 (Tex. App.—Dallas May 22, 2018, no pet. h.). The Government argues she cannot overcome this presumption for two reasons. The Court addresses each in turn.

#### 1. Reimbursement

The Government maintains that even taking Plaintiff's pleadings as true that the down payment was made through her separate property, this would merely be a claim for reimbursement.[8] This is not a correct statement of the law in Texas. As stated before, because the Coppell Property was acquired during the marriage it is presumed to be community property, but that is a presumption that can be overcome. As such, the use of separate property to acquire property is not merely a claim for reimbursement, but is a way to overcome the community presumption.

---

[8] The Government supports this conclusion with *Attaguile*, *Rivera*, and Section 3.402(a)(5) of the Texas Family Code. However, this section of the Texas Family Code references reimbursement related to a home equity loan, and here the Court is looking to Plaintiff's down payment aside from her home equity loan. TEX. FAM. CODE § 3.402(a)(5). Moreover, *Attaguile* holds that courts do not need to consider payments made to pay off a mortgage, when the mortgage is determined to be community, as this does not change the characterization of the estate, but is merely a claim for reimbursement. *Attaguile v. Attaguile*, No. 08-16-00222-CV, 2018 WL 4659580, at *8 (Tex. App.—El Paso Sept. 28, 2018, no pet. h.) (citations omitted). This is different than determining the character of the money used to purchase the Coppell Property. Finally, the *Rivera* case simply determined that a claim for reimbursement would not change the character of property; however, that is not what the Court is looking to here. *Rivera*, 441 S.W.3d at 424 n.2. The Court notes that it did apply these principles when considering Plaintiff's claims regarding making her mortgage payments.

Moreover, even though the Court has already determined that the house is at least in part community property because of the mortgage, this in no way changes the effect of purchasing part of the Coppell Property with separate property. The Supreme Court of Texas previously encountered the question: "What is the status of property, with reference to its being separate or community, when purchased during marriage partly with separate funds of [one spouse] and partly on the credit of community?" *Cleich v. Bongio*, 99 S.W.2d 881, 883 (Tex. 1937). The Supreme Court of Texas answered that, "in Texas it has long been established that such an acquisition has the effect of creating a kind of tenancy in common between the separate and community estates, each owning an interest in the proportion that it supplies consideration."[9] *Id.* Accordingly, the Court finds the Government's argument that any use of separate property is merely a claim for reimbursement to be unpersuasive.

### 2. Donative Intent

The Government also argues that, even if any part of the Coppell Property was purchased with separate property, that Plaintiff demonstrated a donative intent to hold the entirety of the Coppell Property as a community estate. The Government supports this argument with the loan application and the Deed of Trust.[10] At this stage, the Court cannot find that Plaintiff, as a matter of law, indicated a donative intent when acquiring the Coppell Property. The Court explains this decision, addressing both the loan application and Deed of Trust in turn.

---

[9] The Government also attempts to compare the Coppell Property to a joint checking account and the commingling of funds that happens in a joint checking account. However, based on this case law, the Court finds the Government's analogy to a joint checking account to be unpersuasive and therefore does not consider it. Moreover, a case cited by the Government specifically "reject[ed] the argument that real estate, like cash, can be commingled. . . . Realty may be owned jointly by a spouse's separate property and the community estate." *Rivera v. Hernandez*, 441 S.W.3d 413, 424 n.2 (Tex. App.—El Paso 2014, pet. denied).

[10] The Court may consider the Deed of Trust, as it is a document attached to the Government's motion to dismiss that is central to and referenced by the Plaintiff's complaint. *Lone Star Fund*, 594 F.3d at 387 (holding "[t]he Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.").

### a. Loan Application

The Government argues that the loan application indicates that the Coppell Property will be held as community property. The Court acknowledges that Plaintiff did check the box that states the Coppell Property will be held as community property; however, the Government has not provided any case law to indicate that a loan application can demonstrate a donative intent. Indeed, the rule stated by the Government in its objections is "[w]hen one spouse uses separate funds to purchase property during marriage and *takes title* to the property in joint names, the presumption is that a gift to the other spouse was intended." (Dkt. #59 at p. 3) (emphasis added) (citing *In re Marriage of Morris*, 12 S.W.3d 877, 881 (Tex. App.—Texarkana 2000, no pet. (explaining "when a spouse uses separate property to acquire property during marriage and takes title to that property in the names of both spouses, a presumption arises that the purchasing spouse intended to make a gift of one half of the separate funds to the other spouse."))). Applying for a loan, even if it is a loan to pay for real property, is not the same as taking title. As such, at the motion to dismiss stage, the Court is unpersuaded that the loan application demonstrates a donative intent as a matter of law.[11]

### b. Deed of Trust

Next, the Government contends that the Deed of Trust indicates a donative intent because Plaintiff's husband is listed "pro forma" on the deed.[12] As previously stated, using separate funds to purchase real property and taking title in both spouses' names indicates a donative intent. *In re*

---

[11] The Court does not hold that a loan application cannot demonstrate a donative intent, just that the Government has not provided case law to support this suggestion.

[12] The Government also cites law in this section reiterating the general rule that real property acquired during the marriage is presumptively community when there is no language in the deed of trust indicating that the property is separate property. (Dkt. #59 at p. 5) (citing *Van Zandt v. Van Zandt*, 451 S.W.2d 322, 326 (Tex. Civ. App.—Houston [1st Dist.] 1970, writ dism'd)). However, this argument and case do nothing to support the Government's argument regarding a donative intent, but merely restates the general presumption of community property that can be overcome. *See Van Zandt*, 451 S.W.2d at 326.

*Marriage of Morris*, 12 S.W.3d at 881 (citing *Cockerham v. Cockerham*, 527 S.W.2d 162, 168 (Tex. 1975)). However, in this case, Plaintiff did not merely take title in both her name and her husband's name, but instead her husband is listed on the Deed of Trust "pro forma". The Court finds this distinction to preclude ruling as a matter of law on a motion to dismiss that Plaintiff had the intent to gift anything to her husband.[13] In other words, Plaintiff has plausibly suggested that she did not intend to gift any of her separate property to her husband.[14]

II.     **Propriety of the Loan**

The issue before the Court is not solely the characterization of the Coppell Property, but if the lien is properly placed on the Coppell Property based on that characterization. In this case, although the character of the Coppell Property is not completely determined at this stage, as it stands now the Coppell Property is part community property and plausibly pleaded to be part separate property. Again, the MVRA permits a lien to be placed on the debtor's one-half interest in community property, even if it is the non-debtor spouse's solely managed community property. (Dkt. #50 at p. 7) (quoting *Elashi*, 789 F.3d at 549). Accordingly, in this case the lien would be proper on the part of the Coppell Property that is community property.

However, because this property is plausibly held as tenants in common between the community estate and separate property, *Cleich*, 99 S.W.2d at 883, that leaves the question if a lien is properly placed on real property held between a debtor and a non-debtor. In a situation where there is a tenancy in common, if a lien is properly placed on one of the tenants in common,

---

[13] Moreover, even if having her husband listed "pro forma" on the Deed of Trust does indicate a donative intent, this merely creates a presumption of a gift. A presumption that can be overcome. *See Carter v. Carter*, 736 S.W.2d 775, 781 (Tex. App.—Houston [14th Dist.] 1987, no writ) (citing *Cockerham*, 527 S.W.2d at 162; *Peterson v. Peterson*, 595 S.W.2d 889, 892 (Tex. Civ. App.—Austin 1980, writ dism'd w.o.j.) (explaining "[w]hen a spouse uses separate property consideration to pay for land acquired during the marriage, and takes title to the land in the name of both husband and wife, it is presumed that the spouse intended the interest place in the other to be a gift. However, this presumption is rebuttable, and parol evidence is admissible to show that a gift was not intended.").
[14] The Court does not hold that there is in fact not a donative intent in this case, but, instead that there is a plausible suggestion that there was no donative intent for purposes of a motion to dismiss.

11

the lien is properly placed on the property. *See generally Hoover v. Materi*, 515 S.W.2d 406 (Tex. App.—El Paso, 1974, writ ref'd n.r.e). The issue in these cases, is not whether the lien is proper, but the distribution of the proceeds from the sale. *Id.* Here, distribution is not an issue that is ripe for the Court to decide at this time. The only issue before the Court is whether the lien is properly placed on the Coppell Property. Because the Coppell Property is community property, at least in part, the lien is proper and, thus, the Government's motion to dismiss should be granted.

## CONCLUSION

It is therefore **ORDERED** that the Magistrate Judge's Report and Recommendation (Dkt. #50) is **ADOPTED in part and REJECTED in part** as follows:

1. Plaintiff's Motion for Judgment on the Pleadings (Dkt. #42) is hereby **DENIED**.

2. The United States' Motion to Dismiss Third Amended Complaint (Dkt. #36) is hereby **GRANTED** and Plaintiff's claims regarding the propriety of the lien being place on the Coppell Property.

3. Accordingly, Plaintiff's claims are hereby **DISMISSED with prejudice** as to the claims asserted in this lawsuit.[15] All relief not granted herein is **DENIED**. The Clerk is directed to close this civil action.

**SIGNED this 9th day of May, 2019.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

---

[15] If a problem arises regarding the distributions of the funds when the Coppell Property is eventually sold, the Court does not foreclose Plaintiff's ability to file suit seeking clarity on the down payment and to attempt to prove the character of her down payment if the parties cannot reach an agreement.